UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NPG, LLC d/b/a Wellness Connection, AND High Street Capital Partners, LLC, Plaintiffs, v. City of Portland, Maine Defendant. | Civil Action No. **INJUNCTIVE RELIEF SOUGHT** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

NPG, LLC d/b/a Wellness Connection ("Wellness Connection") and High Street Capital Partners, LLC ("High Street") file this Complaint for Declaratory and Injunctive Relief against the City of Portland, as follows:

**SUMMARY OF CLAIM**

1. The adult use marijuana industry is about to launch in Maine and is expected to be highly lucrative. The legal marijuana industry is quickly growing nationwide, with retail sales reaching $12 billion last year. In Maine, the medical marijuana market is now the state's third largest industry, reaching retail sales of $111.6 million last year.[1] And Maine's adult use marijuana market is expected to be even larger. The *Bangor Daily News* has reported that "industry experts expect adult-use marijuana

---

[1] *See* Penelope Overton, *State's Medical Marijuana Market Much Bigger than Anyone Realized*, Portland Press Herald (Feb. 24, 2019).

1

businesses to take off quickly, in many cases displacing the already lackluster market for medical marijuana." Lori Valigra, *How the First Year of Maine's Recreational Marijuana Market Will Likely Roll Out*, Bangor Daily News (Jun. 17, 2019).

2. The City of Portland is Maine's largest municipality and is expected to be the most lucrative market in Maine for the sale of legal marijuana. Portland could begin awarding licenses for retail marijuana stores this summer.

3. Under its current ordinance, Portland will only be awarding 20 marijuana retail licenses. The City will award these licenses using a points matrix that allocates a fixed number of points to applicants who meet certain criteria. *See* Portland, Me., Code § 35-14(f)(4). The 20 applicants who receive the highest score will receive licenses to sell marijuana at storefront locations in Portland. *Id*.

4. The points matrix in Portland's ordinance heavily favors Maine residents. More than 25% of the points available either are reserved for Maine residents or are awarded based on a consideration that strongly favors Maine residents.

5. The residency preference in Portland's points matrix violates the dormant Commerce Clause of the United States Constitution by explicitly and intentionally favoring Maine residents over non-residents. Before Portland awards the 20 retail licenses permitted by the ordinance, the Court should enjoin the City from using the points matrix and require it to award these licenses in a manner that does not violate the dormant Commerce Clause. This is the only way to ensure that residents and non-residents alike, including Plaintiffs, are able to compete for marijuana retail licenses in Portland on equal terms.

**PARTIES AND JURISDICTION**

6.     Plaintiff Wellness Connection is a Maine company that has applied for a license with Maine's Office of Marijuana Policy to operate a retail store in Portland. Wellness Connection is affiliated with Northeast Patients Group d/b/a Wellness Connection of Maine, which operates four of the eight registered dispensaries in Maine's medical marijuana program. Wellness Connection is seeking to open its adult use retail location at the Congress Street location currently operated by Northeast Patients Group in Portland.

7.     Plaintiff High Street is a Delaware limited liability company that wholly owns Wellness Connection. High Street is owned by residents of states other than Maine.

8.     The City of Portland is Maine's largest municipality and is located in Cumberland County.

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since Wellness Connection and High Street have asked it to rule that Portland's points matrix violates the United States Constitution.

**PORTLAND'S RESIDENCY PREFERENCE IS UNCONSTITUTIONAL**

10.     Adult use marijuana has been legal in Maine since 2016, when Maine voters approved Maine Question 1, *An Act to Legalize Marijuana*. Now, four years later, sales of recreational marijuana are about to begin.

11.     Maine's recreational marijuana program requires municipalities to "opt in," meaning that a city or town must affirmatively vote to permit the sale of adult use marijuana within its borders.

12.     Portland adopted its ordinance permitting and regulating the sale of marijuana on May 18, 2020.  This ordinance limits the number of retail locations in Portland to a maximum of 20, Portland, Me., Code § 35-43(i), and requires that Portland's marijuana retail stores be spaced at least 250 feet apart, Portland, Me., Code § 35-43(h).

13.     The Portland City Council created a points matrix that scores each applicant to competitively award the 20 available retail licenses and to resolve conflicts in the event that two applicants are located within 250 feet of one another.  *See* Portland, Me., Code § 35-14(f)(4).

14.     Portland's points matrix includes eight criteria worth varying point totals which reflect the relative importance of each category to the City Council.

15.     The second most valuable category under this matrix explicitly advantages five-year Maine residents over residents of other states.  Five points are awarded to any applicant who is "[a]t least 51% owned by individual(s) who have been a Maine resident for at least five years." *Id*.

16.     The matrix also awards four points to any applicant "[o]wned by individual(s) who have previously been licensed by the State of Maine or a Maine municipality for non-marijuana related businesses . . . ." *Id*.  This category also favors Maine residents over residents of other states.

17.     Portland's points matrix explicitly discriminates against residents of other states and is thus precisely the type of local law that is prohibited by the dormant Commerce Clause of the U.S. Constitution.  *See* U.S. Const. Art. I, § 8, Cl. 3.

18.     The City of Portland cannot show a legitimate local purpose for the provisions in the points matrix that advantage Maine residents.  On the contrary, the

City Council has been clear that the purpose of these provisions is to advantage Maine residents.  *See* Portland City Council Meeting (May 18, 2020) at 3:42:52 – 3:43:30; 3:45:15 – 3:47:20 (City Council members stated that the rationale behind the licensing scheme is to "allow the local market to grow before there was an opportunity for outside investment to come in," and to "advantage or give a slight preference for individuals and entities that have been Maine residents, local businesses, smaller businesses.").[2]

19. When it adopted the points matrix, the Portland City Council was aware that the State of Maine had just settled a similar lawsuit challenging a provision in Maine's adult use marijuana statute, 28-B M.R.S. § 202(2), which required applicants to be majority-owned by four-year Maine residents.  On May 11, the State decided not to enforce that provision in the law after the Attorney General advised that this residency requirement "is subject to significant constitutional challenges and is not likely to withstand such challenges."  *See NPG, LLC, et al. v. Dep't of Admin. and Fin. Servs., et al.,* Stipulation of Dismissal, Civil Action No. 1:20-cv-00107-NT (May 11, 2020).

20. Counsel for the City of Portland advised the City Council, before it adopted the points matrix, that the provisions favoring Maine residents could be subject to a dormant Commerce Clause challenge and put forth an amendment removing the residency preference for the Council's consideration.  *See* Portland City Council Meeting (May 18, 2020) at 3:43:38 – 3:44:44. The City Council rejected this amendment.

21. The points matrix's preference for Maine residents is not only unconstitutional, but also bad public policy.  Its natural result will be to stifle Portland's burgeoning cannabis industry by drastically limiting the universe of potential investors.

---

[2] Available at https://reflect-pmc-me.cablecast.tv/CablecastPublicSite/show/15380?channel=1.

22. Portland's new marijuana ordinance takes effect on June 17, 30 days after the City Council voted to adopt it. Plaintiffs believe that the City intends to accept applications for retail marijuana licenses during a brief window beginning in June or early July, though the City has not yet announced when it will begin accepting applications. Plaintiffs understand that the City plans to award all 20 retail licenses this summer.

23. Because Wellness Connection is owned by High Street, which is not owned by Maine residents and has not previously been licensed in Maine for non-marijuana related businesses, rather than by Maine residents who have held Maine business licenses before, Plaintiffs are ineligible for more than a quarter of the total points available in Portland's competitive licensing process. If this process proceeds with the residency preference in place, Plaintiffs will be at a significant disadvantage in the licensing process. In the absence of a preliminary injunction, Plaintiffs will be without meaningful recourse if they do not receive one of the 20 available licenses, even though Portland's residency preference is unconstitutional and directly targets applicants such as Wellness Connection.

**COUNT I - Violation of Federal Constitutional Rights**
**U.S. Const. Art. I, § 8, Cl. 3, 42 U.S.C. § 1983**

24. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

25. The U.S. Constitution prohibits state and local laws that discriminate against citizens of other states. "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter. If a restriction on commerce is discriminatory, it is virtually *per se* invalid." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994).

*See also, e.g., Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996); *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2461 (2019) ("[I]f a state law discriminates against out-of-state goods or nonresident actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." (alterations and quotation marks omitted)).

26. A local law that discriminates against interstate commerce on its face "invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979). *See also Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 581 (1997) (explaining that strict scrutiny of a law that facially discriminates against non-residents "is an extremely difficult burden, so heavy that facial discrimination by itself may be a fatal defect" (quotation marks omitted)).

27. The residency preference in Portland's points matrix, Portland, Me., Code § 34-14 (f)(4), discriminates on its face against non-residents.

28. Wellness Connection and High Street are harmed by the residency preference in Portland's points matrix because the law explicitly targets non-residents, undermines the ability of Wellness Connection—because it is wholly-owned by High Street—to obtain a retail license, and limits both Plaintiffs' economic opportunities in Portland's marijuana market.

29. Portland's residency preference does not have a legitimate local purpose. The City Council has been explicit that the purpose of this residency preference is to benefit Mainers over non-residents.

30. Injunctive and declaratory relief are needed to resolve this dispute between the City of Portland and the Plaintiffs, who have adverse legal interests,

because Portland's residency preference violates the United States Constitution and subjects Plaintiffs to serious, concrete, and irreparable injuries.

31. Because this is an action to enforce Plaintiffs' constitutional rights brought pursuant to 42 U.S.C. § 1983, Plaintiffs should receive their reasonable attorney's fees incurred prosecuting this action. *See* 42 U.S.C. § 1988.

## COUNT II - Declaratory Judgment Act
## U.S. Const. Art. I, § 8, Cl. 3, 28 U.S.C. § 2201

32. Plaintiffs reallege the preceding paragraphs as if fully set forth herein.

33. Plaintiffs Wellness Connection and High Street have taken the position that Portland's residency preference violates the dormant Commerce Clause of the United States Constitution and is thus unenforceable.

34. Portland's residency preference directly harms Wellness Connection and High Street.

35. The City of Portland has taken the position that the residency preference in the marijuana ordinance is enforceable, and the City plans to use this residency preference to begin allocating 20 retail licenses as early as June 2020.

36. An actual controversy exists between Plaintiffs and the City as to whether the City may use the points matrix containing the residency preference to allocate retail licenses.

37. Declaratory and injunctive relief are needed to resolve this dispute.

38. Under 28 U.S.C. § 2201 the Court has the power to declare the rights of the parties.

    **WHEREFORE**, Plaintiffs request that this Court enter judgment:

    A) declaring that the residency preference in the City's points matrix violates the United States Constitution;

B) preliminarily and permanently enjoining the City of Portland from awarding retail marijuana licenses in any manner that gives preference to Maine residents over non-residents;

C) awarding attorneys' fees and costs to Plaintiffs;

D) granting such other and further relief as the Court deems just and proper.

    /s/ Matthew Warner
Matthew S. Warner, Maine Bar No. 4823
Alex Harriman, Maine Bar No. 6172
Attorneys for NPG, LLC d/b/a Wellness Connection

Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
mwarner@preti.com
aharriman@preti.com

  /s/ Michael D. Traister
Michael D. Traister, Esq.
Murray Plumb & Murray, P.A.
75 Pearl Street, P.O. Box 9785
Portland, ME 04101-5085
207.773.5651
mtraister@mpmlaw.com

Thomas O'Rourke (PA 308233)
Cozen O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
215.665.5585
tmorourke@cozen.com
*Pro hac vice application forthcoming*

Attorneys for High Street Capital Partners, Inc.

June 15, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2020, I electronically filed the Complaint for Declaratory and Injunctive Relief with the Clerk of Court by electronic mail and will send notification of such filing(s) to the counsel of record.

        /s/ Matthew Warner
Matthew S. Warner, Maine Bar No. 4823
Attorneys for NPG, LLC d/b/a Wellness Connection

Preti Flaherty Beliveau & Pachios LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207.791.3000
mwarner@preti.com

June 15, 2020